UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOL DAVIS, INDIVIDUALLY AND AS TRUSTEE OF THE SOL DAVIS RETIREMENT PLAN; GARY S. DAVIS, INDIVIDUALLY AND AS PARENT OF S.W.D. AND J.F.D.; JING W. DAVIS; DAVID L. DAVIS, INDIVIDUALLY AND AS PARENT OF D.L.D.; CHRISTINA M. DAVIS; DANIEL L. DAVIS, INDIVIDUALLY AND AS PARENT OF H.D.D.; TRACI D. DAVIS; SAMUEL D. DAVIS; MELISSA DORON, AS PARENT OF A.S.D.; FRANK S. KATZ; PAULA S. KATZ; RITA S. KATZ; DANIEL S. KATZ; BERNARD B. WINEBERG; LORETTA D. WEINBERG; THOMAS R. FITZMAURICE; MARCIA B. FITZMAURICE; RICHARD ABRAMOWITZ, INDIVIDUALLY AND AS TRUSTEE OF THE ABRAMOWITZ & POMERANTZ, P.A. RETIREMENT PLAN; HOWARD L. POMERANTZ, INDIVIDUALLY AND AS TRUSTEE OF THE ABRAMOWITZ & POMERANTZ, P.A. RETIREMENT PLAN; ROBIN S. ABRAMOWITZ; WENDY SAGER POMERANTZ; THERESA A. WOLFE; ARNOLD KOHN; PEGGY KOHN; WALTER R. JOHNSON; MITCHELL J. RAUSHER; MARSHA H. RAUSHER; ERIC M. RAUSHER; JASON M. RAUSHER; MARIA L. SINAGUGLIA; | |
| V. | |
| CONNECTICUT COMMUNITY BANK, N.A., owner of WESTPORT NATIONAL BANK | FEBRUARY 23, 2010 |

**COMPLAINT**

**I.    JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and to the extent necessary pursuant to this Court's supplemental jurisdiction over related claims and parties under 28 U.S.C. § 1367(a). The plaintiffs and the defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, for

each plaintiff in actual damages, statutory punitive damages, statutory attorneys' fees, statutory treble damages and common law punitive damages, and the claims asserted on behalf of each of the plaintiffs arises out of the same factual circumstances and conduct by defendant.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that defendant is located in this District.

## II.    PARTIES

### A.    Plaintiffs

3.     Plaintiff Sol Davis is a resident of Houston, Texas. Plaintiff Sol Davis brings this action individually and as Trustee of the Sol Davis Retirement Plan.

4.     Plaintiff Gary S. Davis is a resident of Bellaire, Texas. Plaintiff Gary S. Davis brings this action individually and as parent of SW.D. and J.F. D.

5.     Plaintiff Jing W. Davis is a resident of Bellaire, Texas.

6.     Plaintiff David L. Davis is a resident of League City, Texas. Plaintiff David L. Davis brings this action individually and as parent of D.L.D.

7.     Plaintiff Christina M. Davis is a resident of League City, Texas.

8.     Plaintiff Daniel L. Davis is a resident of League City, Texas. Plaintiff Daniel L. Davis brings this action individually and as parent of H.D.D.

9.     Plaintiff Traci D. Davis is a resident of League City, Texas.

10.    Plaintiff Samuel D. Davis is a resident of Houston, Texas.

11.    Plaintiff Melissa Doron is a resident of Houston, Texas. Plaintiff Melissa Doron brings this action as parent of A.S.D.

2

12. Plaintiff Frank S. Katz is a resident of Houston, Texas.

13. Plaintiff Paula S. Katz is a resident of Houston, Texas.

14. Plaintiff Rita S. Katz is a resident of Houston, Texas.

15. Plaintiff Daniel S. Katz is a resident of Houston, Texas.

16. Plaintiff Bernard B. Wineberg is a resident of Lincolnwood, Illinois.

17. Plaintiff Loretta D. Wineberg is a resident of Lincolnwood, Illinois.

18. Plaintiff Thomas R. Fitzmaurice is a resident of Hilton Head, South Carolina.

19. Plaintiff Marcia B. Fitzmaurice is a resident of Hilton Head, South Carolina.

20. Plaintiff Richard Abramowitz is a resident of Fort Lauderdale, Florida. Plaintiff Richard Abramowitz brings this action individually and as Trustee of the Abramowitz & Pomerantz, P.A. Retirement Plan.

21. Plaintiff Howard L. Pomerantz is a resident of Fort Lauderdale, Florida. Plaintiff Howard L. Pomerantz brings this action individually and as Trustee of the Abramowitz & Pomerantz, P.A. Retirement Plan.

22. Plaintiff Robin S. Abramowitz is a resident of Weston, Florida.

23. Plaintiff Wendy Sager Pomerantz is a resident of Weston, Florida.

24. Plaintiff Theresa A. Wolfe is a resident of Pearland, Texas.

25. Plaintiff Arnold Kohn is a resident of Monroe Township, New Jersey.

26. Plaintiff Peggy Kohn is a resident of Monroe Township, New Jersey.

27. Plaintiff Walter R. Johnson is a resident of Stuart, Florida.

28. Plaintiff Mitchell J. Rausher is a resident of Boca Raton, Florida.

29. Plaintiff Marsha H. Rausher is a resident of Boca Raton, Florida.

30. Plaintiff Eric M. Rausher is a resident of Boca Raton, Florida.

31. Plaintiff Jason M. Rausher is a resident of Boca Raton, Florida.

32. Plaintiff Maria L. Sinaguglia is a resident of Redondo Beach, California.

**B.     Defendant**

33. Defendant Connecticut Community Bank, N.A. ("CCB") is a nationally chartered bank that owns and operates offices throughout lower Fairfield County, including Westport National Bank ("WNB"). Defendant CCB has its principal place of business in Westport, Connecticut and its division, WNB, has offices in Westport, Connecticut. At all times mentioned herein, defendant CCB and its division, WNB, were engaged in trade and commerce in the State of Connecticut and transacted business in the State of Connecticut.

**III.   CLAIMS FOR RELIEF**

    **A.     FIRST CLAIM FOR RELIEF** (Breach of Contract)

1. - 33. Paragraphs 1 through 33 of this Complaint are incorporated as ¶¶ 1 through 33 of the First Claim for Relief.

34. At various times in and after July 1999 and prior to December 2008, each of the plaintiffs entered into a Custodian Agreement with WNB in the form, as amended, attached hereto as Exhibit A.

4

35. Pursuant to ¶ 4 of plaintiffs' Custodian Agreements with WNB, WNB agreed to serve as custodian of each plaintiff's retirement account assets for as long as each plaintiff had an agreement in effect with PSCC Services, Inc. ("PSCC") pertaining to each plaintiff's investments with each plaintiff's investment manager.

36. Pursuant to ¶ 4 of plaintiffs' Custodian Agreements with WNB, WNB further agreed to maintain adequate records indicating the ownership by each plaintiff of investments made by each plaintiff's investment manager being held by WNB as custodian for each plaintiff.

37. Pursuant to ¶ 5 of plaintiffs' Custodian Agreements with WNB, WNB further agreed to provide each plaintiff with annual account statements setting forth the property held by WNB as custodian.

38. By agreeing to serve as custodian of plaintiffs' retirement accounts, WNB assumed the responsibility of reporting the fair market value of plaintiffs' retirement accounts to the Internal Revenue Service.

39. Pursuant to ¶ 6 of plaintiffs' Custodian Agreements with WNB, WNB further agreed that it would charge each plaintiff annual percentage fees for its custodial services based on the average value of the assets WNB was holding for each plaintiff, determined on an annual basis, which each plaintiff authorized WNB to collect directly from the assets WNB was holding as custodian.

40. Pursuant to ¶ 4 of plaintiffs' Custodian Agreements with WNB, each plaintiff further authorized WNB to pay PSCC annual fees directly from each plaintiff's account, including annual percentage fees based on the average value of the assets WNB was holding for each plaintiff, determined

on an annual basis, and a fee for each transaction effected by each plaintiff's investment manager on behalf of each plaintiff based on the amount of each transaction.

41. By agreeing to serve as custodian of plaintiffs' retirement accounts, WNB undertook to provide safeguards to minimize against the risk of loss due to advertent or inadvertent mishandling of the account assets by plaintiffs' investment manager.

42. Each plaintiff's agreement with PSCC remained in effect through and after December 11, 2008.

43. WNB's Custodian Agreements with plaintiffs remained in effect through and after December 11, 2008.

44. WNB did not at any time prior to December 11, 2008 obtain custody of any of the investments plaintiffs' investment manager purported to make on plaintiffs' behalf, in breach of its Custodian Agreements with plaintiffs.

45. WNB did not at any time prior to December 11, 2008 accurately ascertain the fair market value of plaintiffs' retirement accounts, in breach of its contractual obligations pursuant to its Custodian Agreements with plaintiffs.

46. WNB charged plaintiffs fees for itself and collected annual percentage fees for PSCC that were not calculated on the basis of the investments held by WNB for each plaintiff, thus overcharging each plaintiff such fees, in breach of its Custodian Agreements with plaintiffs.

47. WNB collected transaction fees for PSCC from each plaintiff's account for transactions that never occurred, in breach of its Custodian Agreements with plaintiffs.

48. Plaintiffs have sustained financial loss as a result of WNB's breach of its Custodian Agreements as aforesaid.

49. Defendant CCB is liable to plaintiffs for their losses as a result of WNB's breach of its Custodian Agreements as aforesaid.

**B.     SECOND CLAIM FOR RELIEF** (Negligence)

1. - 43. Paragraphs 1 through 43 of the First Claim for Relief are incorporated as ¶¶ 1 through 43 of the Second Claim for Relief.

44. Throughout the period of time its Custodian Agreements with plaintiffs remained in effect, WNB failed to undertake reasonable efforts to take custody of the assets acquired by plaintiffs' investment manager for each plaintiff or to verify the existence of such assets.

45. Throughout the period of time its Custodian Agreements with plaintiffs remained in effect, WNB failed to perform reasonable due diligence as necessary to maintain adequate records indicating the ownership by each plaintiff of investments made by each plaintiff's investment manager being held by WNB as custodian for each plaintiff.

46. Throughout the period of time its Custodian Agreements with plaintiffs remained in effect, WNB failed to perform reasonable due diligence as necessary to provide each plaintiff with accurate annual account statements setting forth the property held by WNB as custodian.

47. Throughout the period of time its Custodian Agreements with plaintiffs remained in effect, WNB failed to perform reasonable due diligence to ascertain the fair market value of plaintiffs' accounts.

48. Throughout the period of time its Custodian Agreements with plaintiffs remained in effect, WNB failed to perform reasonable due diligence as necessary to calculate the annual percentage fees it charged and collected from each plaintiff's account for itself and PSCC.

49. Throughout the period of time its Custodian Agreements with plaintiffs remained in effect, WNB failed to perform reasonable due diligence as necessary to calculate the transaction fees it collected from each plaintiff's account for PSCC.

50. As a result of the negligence of WNB in failing to perform reasonable due diligence as aforesaid or in failing to take steps to obtain custody of the assets purportedly acquired by plaintiffs' investment manager or to otherwise verify the existence of such assets, plaintiffs sustained financial losses.

51. As a result of the negligence of WNB, plaintiffs paid unwarranted annual percentage fees to WNB and PSCC and unwarranted transaction fees to PSCC.

52. Defendant CCB is liable to plaintiffs for their losses as a result of WNB's negligence.

**C.      THIRD CLAIM FOR RELIEF** (Breach of Fiduciary Duty)

1. - 49. Paragraphs 1 through 49 of the Second Claim for Relief are incorporated as ¶¶ 1 through 49 of the Third Claim for Relief.

50. Throughout the period of time that plaintiffs' Custodian Agreements with WNB were in effect, WNB held itself out to plaintiffs, as having superior knowledge, skill and expertise in providing banking trust services, including custodial services for retirement accounts.

51. Throughout the period of time that plaintiffs' Custodian Agreements with WNB were in

8

effect, plaintiffs reposed their trust and confidence in WNB and, in particular, relied on WNB's superior knowledge, skill and expertise in providing banking trust services, including custodial services for retirement accounts.

52. Throughout the period of time that plaintiffs' Custodian Agreements with WNB were in effect, WNB knew that plaintiffs were reposing their trust and confidence in WNB and, in particular, were relying upon WNB's superior knowledge, skill and expertise in providing banking trust services, including custodial services for retirement accounts.

53. As a consequence of its superior knowledge, skill and expertise in providing banking trust services, including custodial services for retirement accounts, and its undertakings pursuant to its Custodian Agreements with plaintiffs, WNB was under a fiduciary duty to represent plaintiffs' interests with heightened care and diligence and, with respect to its dealings with plaintiffs, to deal honestly and to put plaintiffs' interests ahead of its own interests.

54. Throughout the period of time that plaintiffs' Custodian Agreements with WNB were in effect, WNB was aware that the fulfillment of its duties to plaintiffs reasonably required it to take custody of the assets acquired by plaintiffs' investment manager or, at a minimum, to verify the existence of such assets.

55. Throughout the period of time that plaintiffs' Custodian Agreements with WNB were in effect, WNB was aware that the fulfillment of its duties to plaintiffs required it to undertake reasonable due diligence to accurately ascertain and report the fair market value of plaintiffs' accounts and the

9

transaction undertaken by plaintiffs' investment manager to determine the fees to be charged and collected from plaintiffs' accounts.

56. In failing to conduct reasonable due diligence, WNB did not exercise the heightened care and diligence required of it, in breach of its fiduciary duty to plaintiffs.

57. WNB's conduct as aforesaid in failing to conduct appropriate due diligence and in failing to take custody of the assets in plaintiffs' retirement accounts or to take other measures to verify the existence of such assets breached WNB's fiduciary duty to plaintiffs.

58. Plaintiffs have sustained financial loss as a result of WNB's breach of its fiduciary duty to them.

59. As a result of WNB's breach of its fiduciary duty to plaintiffs, plaintiffs paid unwarranted annual percentage fees to WNB and PSCC and unwarranted transaction fees to PSCC.

60. WNB's conduct as aforesaid was undertaken wantonly, willfully and in reckless disregard of plaintiffs' rights.

61. Defendant CCB is liable to the plaintiffs for the financial losses they have sustained and other damages recoverable as a result of WNB's breach of its fiduciary duty.

## IV. PRAYER FOR RELIEF

Wherefore plaintiffs seek the following relief:

1. Compensatory damages;

2. Common law punitive damages;

3. Such other relief as the Court deems equitable.

## CLAIM FOR JURY TRIAL

PLAINTIFFS CLAIM A TRIAL BY JURY.

Dated: February 23, 2010

Respectfully submitted,

David S. Golub ct 00145
Jonathan M. Levine ct07584
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
P.O. Box 389
Stamford, Ct 06904
(203) 325-4491

Kathryn Emmett ct05605
EMMETT & GLANDER
45 Franklin Street
Stamford, Ct 06901
(203) 324-7744

and

J. Daniel Sagarin ct04289  
David A. Slossberg ct13116  
Andrew W. Skolnick ct13422  
HURWITZ, SAGARIN, SLOSSBERG &  
   KNUFF, LLC  
147 North Broad Street  
P.O. Box 112  
Milford, Ct 0460-0112  
(203) 877-8000

By: _____  
David S. Golub

Attorneys for Plaintiffs

# EXHIBIT A



## CUSTODIAN AGREEMENT

It is hereby agreed between Westport National Bank (the "Bank"), and

(the "Principal"), that the Bank will act as custodian for the Principal upon the following terms and conditions:

1. It is the Principal's intent to transfer cash or cash equivalents to the Bank, as provided herein for investment. The Bank shall accept such property from the Principal and the Bank shall invest all such cash and cash equivalents held hereunder, and any interest, dividend or other income earned from property held by the Bank hereunder, in the Bank's deposit money market account until the Bank transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS"), as contemplated by Paragraph 2 hereof.

2. The Principal hereby authorizes the Bank to transmit to BLMIS all funds received by the Bank from the Principal to the extent that the transmission of such funds is practical and acceptable to BLMIS. The Bank is hereby authorized and directed, in its capacity as a custodian hereunder for the benefit of the Principal, to enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested. The Principal has chosen BLMIS to receive and to invest the Principal's funds, and has not relied on the Bank in choosing to give BLMIS full discretionary authority. It is understood and acknowledged that funds to the Principal which are transmitted to BLMIS will be transmitted together with funds of other persons or entities for whom the Bank is acting in a similar capacity; that the investment account of BLMIS will be under the name "Westport National Bank"; that the funds of the Principal transmitted to BLMIS will be grouped with funds of other persons or entities for investment with BLMIS; that the Bank has no authority or ability to direct or oversee in any manner the discretionary investments made by BLMIS; that the Bank is acting solely in a ministerial capacity; that the Bank assumes no responsibility for the investment performance of BLMIS; and that the Principal will hold the Bank harmless from any liability to BLMIS incurred by the Bank resulting from the performance of investments made on behalf of the Principal pursuant hereto by the Bank or BLMIS.

3. The Bank will also follow such reasonable written directions which the Principal may deliver to the Bank at any time, or from time to time, including to request that BLMIS return assets of the Principal to the Bank and for the Bank to remit cash or cash equivalents to the Principal. However, unless the Bank receives such written directions, the Bank will invest all funds as described in Sections 1 and 2 of this Custodian Agreement.

4. The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. The Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual fee for services provided by PSCCSI an amount equal to .010 of the average assets (determined on an annual basis) held by the Bank under this Custodian Agreement, plus .002 of the amount of each transaction effected by BLMIS on behalf of the Principal with a maximum of .025 of average assets. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI.

5. The Bank shall render at least annually statements reflecting the property held by it as custodian hereunder. Such statements shall be rendered to the Principal, or its designated representative. In the event that such statements are rendered to the designated representative, the Bank shall have no further responsibility to provide statements or reports directly to the Principal.

6. The custodial services fees of the Bank for acting hereunder shall be an annual charge of .006 of the average assets held hereunder (determined on an annual basis). The Bank is hereby authorized to deduct such fees from the assets held hereunder at such times as shall reasonably be determined by the Bank.

7. This Custodian Agreement may be terminated by either party upon ninety (90) days prior written notice. Upon termination, all cash, cash equivalents and other property held hereunder shall be delivered as soon as practicable to the Principal, or such representative of the Principal as the Principal may direct in writing.

This Custodian Agreement is entered into as of the date shown below between the Bank and the Principal, each intending to be legally bound thereby.

WESTPORT NATIONAL BANK

Dated: August 5, 1999

By: _____

Address:

By: _____

To: Westport National Bank
1495 Post Road East
Post Office Box 309
Westport, CT 06880

Re:

Gentlemen:

I have read the revised Section 4 of the Custodian Agreement governing my above IRA accounts maintained at Westport National Bank. I hereby agree to its terms and make it part of the documents governing my IRA accounts.

Revised Section 4 Text

"The Bank shall maintain adequate records indicating the ownership by the Principal of investments with BLMIS and held by the Bank as custodian for the Principal. The Principal and the Bank also acknowledge that the Principal has entered into an agreement with PSCC Services Inc. ("PSCCSI"), for services to be provided by PSCCSI with respect to Principal's investments made by BLMIS. The Bank is authorized and directed to coordinate its record keeping with that provided by PSCCSI. The Bank shall serve as custodian hereunder only in the event such agreement between PSCCSI remains in effect. For services provided by PSCCSI after December 31, 2004, the Bank is further authorized and directed to pay to PSCCSI from the custodial account of Principal established hereunder an annual recordkeeping fee an amount equal to .006 of the assets at the time of billing held by the Bank under this Custodian Agreement. Such fees shall be paid in such manner and at such time as shall reasonably be determined by the custodian and as shall be reasonably acceptable to PSCCSI. If any administrative services are requested, warranted and performed, then there will also be a bill submitted directly by PSCCSI for those administrative services."

I understand that upon receipt of a bill from PSCC Services, Inc. for administrative services, I may then decide whether to pay such bill directly or authorize the Bank to pay it from my IRA accounts. I also understand that I may terminate any of these IRA accounts at any time without penalty.

Dated: _____, 2004      Signed: _____