# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

STEPHEN R. LEVINSON; RICHARD E.   :
LAYTON; AND DR. R. LAYTON P.A. 401(K)   :
PLAN   :
      PLAINTIFF,   : CIVIL ACTION No. 3:09cv269(VLB)
         v.   :
   :
WESTPORT NATIONAL BANK;   :
    DEFENDANT.   :
------------------------------------------------------------X
AUDREY SHORT, INDIVIDUALLY AND   :
FAYE SHORT, INDIVIDUALLY AND AS   :
TRUSTEE FOR THE FAYE S. ALBERT   :
RETIREMENT PLAN, ALBERT RETIREMENT:
PLAN.   :
   :
      PLAINTIFFS,   : CIVIL ACTION No.3:09-cv-1955(VLB)
      v.   :
   :
CONNECTICUT COMMUNITY BANK, N.A.   :
    DEFENDANT.   :
------------------------------------------------------------X
SOL DAVIS, INDIVIDUALLY AND AS   :
TRUSTEE OF THE SOL DAVIS   :
RETIREMENT PLAN, ET AL.   :
   :
      PLAINTIFFS,   : CIVIL ACTION No. 3:10cv261(VLB
      v.   :
   :
CONNECTICUT COMMUNITY BANK, N.A.        JUNE 27, 2013
OWNER OF WESTPORT NATIONAL BANK   :
    DEFENDANT.   :
------------------------------------------------------------X

### ORDER GRANTING [*DAVIS* DKT. 250] MOTION IN LIMINE TO EXCLUDE IMPROPER OPINIONS GIVEN BY PLAINTIFFS' EXPERT STEVEN L. HENNING AND [*DAVIS* DKT. 327] MOTION TO STRIKE HENNING'S REVISED EXPERT REPORT; ORDER ON PLAINTIFFS' PROFFER OF EVIDENCE OF CUTPA VIOLATION [*LEVINSON* DKT. 555; *DAVIS* DKT. 346]

I.    **EXPERT REPORTS OF STEVEN L. HENNING**

Defendant has moved *in limine* in *Davis v. Connecticut Community Bank*, 10-cv-261 ("*Davis*") for this Court to preclude the Plaintiffs' expert Steven L. Henning ("Henning") from offering testimony at trial on the basis that Henning's expert report impermissibly reaches legal conclusions, usurps the role of the Court in instructing the jury, and usurps the role of the jury in interpreting the governing custodial agreements.  In response to the pending motion *in limine*, the Plaintiffs submitted a revised expert report which the Defendant has moved to strike on the same basis.   For the following reasons, the Court GRANTS the Defendant's motion *in limine* and the motion to strike.

**Background**

The *Davis* Plaintiffs were ordered to disclose their expert by June 21, 2012.  [*Davis* Dkt. 111.]  Federal Rule of Civil Procedure 26(a)(2)(B) requires that expert disclosure be accompanied by a written report.  The *Davis* Plaintiffs were thus required to submit their expert reports by June 21, 2012.  The *Davis* Plaintiffs have produced three Henning reports.  The first dated June 21, 2012, the second dated April 19, 2013 [*Levinson* Dkt. 529], and the third dated April 22, 2013 [*Davis* Dkt. 310].  The Plaintiffs explained that Henning's latest revision reflects several stipulations between the parties to exclude from trial evidence concerning the OCC's examinations of Westport National Bank ("WNB"), the FDIC's examinations of Westport Bank & Trust Company's ("WBT") prior custodial services practices and all evidence of Pullman & Comley's reviews of WBT's prior custodial services to exclude any reference in the report to such evidence.  The

2

Plaintiffs also explained that they asked Henning to prepare a revised report to "further clarify[]" that they do not intend to have him offer expert opinions contrary to the Court's ruling in *Levinson* on the scope of permissible expert testimony, rather than redacting impermissible opinions in accordance with the Court's Order. *Id.*

On April 29, 2013, the Defendant moved to strike the revised expert report dated April 22, 2013 arguing that the revised report still impermissibly reaches legal conclusions and also improperly asserts new opinions. [Dkt. #310]. In Henning's revised expert report dated April 22, 2013, he has added several new paragraphs of content. First, Henning added an entirely new discussion regarding the various obligations that IRS Form 5305 imposes on custodians. *Id.* at 2. Second, Henning added a paragraph identifying the content of the Bank's[1] December 2004 position description regarding the duties and responsibilities of a custodial services manager. *Id.* at 2-3. Third, Henning elaborated on his discussion of the Investment Advisers Act of 1940 by identifying Rule 206(4)-2 of the Adviser's Act and discussing in depth the responsibilities that the Rule prescribes for custodians. *Id.* at 3. Fourth, Henning added new citations to primary sources in support of the statements he had previously made in the original version of the report such as several new references to OCC Bulletins and the OCC Handbook on Custody Services. *Id.* at 1 n.2-3, 5 n.8-10, 6 n.15, 8

---

[1] The *Davis* Plaintiffs only named Connecticut Community Bank, N.A. ("CCB") as a defendant in this action. However, these actions only concern the Plaintiffs' relationship with WNB, a division of CCB. For simplicity, the Court will refer to the Defendant as "the Bank" throughout this ruling.

n.20-21, 9 n.22.   Lastly, Henning added throughout the expert report additional statements about the necessity and propriety of using a SAS 70 report and the Bank's failure to conduct any audit of Bernard L. Madoff Investment Securities, LLC ("BLMIS").

On April 19, 2013, the Plaintiffs filed exhibits to the Joint Trial Memorandum which included a third version of Henning's report dated April 19, 2013, which slightly differed from the April 22, 2013 version as well as from the version dated June 21, 2012.[2]  [*Levinson* dkt. #529, Ex. A to Joint Trial Memorandum].  It appears that Plaintiffs are attempting to rely on at least two if not on all three versions of Henning's expert report at trial without clearly distinguishing between the versions or citing authority that permits them to rely on multiple reports from the same expert.  As it is unclear whether the submission of the April 19, 2013 version was in error, the Court will analyze all three versions of the revised report with respect to the pending motion to strike and the motion *in limine*.

In all three versions of the expert report, Henning gives various opinions in which he concludes that the Bank did not fulfill its responsibility to maintain the safety of the assets in custody in accordance with various standards in practice at the time, that the Bank disregarded standards of care by failing to take any steps to perform due diligence, and that the Bank breached the "well established standards of conduct governing the custodial services industry."  (*See* April 22,

_____

[2] Notably, footnote 58 in the April 22, 2013 version of Henning's report in which Henning states that there is a dispute in this matter regarding whether the handling of the custodial accounts constitutes a collective investment fund is absent from the April 19, 2013 version.

4

2013 Version at 10-12; April 19, 2013 Version at 11-12, June 12, 2012 Version at 1-10, 2-4).  Throughout all three versions of the report, Henning opines that the Bank violated its custodial obligations and industry standards of conduct.  *See* (April 22, 2013 Version at 5-6, 12, 15-16; April 29, 2013 Version at 5-6, 12, 15-15; June 21, 2012 Version at 1-10, 3-1, 2-11).

<u>Legal Standard</u>

Federal Rule of Civil Procedure 26(a)(2)(D) requires parties to disclose expert testimony by the deadline set by the Court, and in the absence of a court order. Fed. R. Civ. P. 26(a)(2)(D). Absent a stipulation or court order, a party must disclose its expert report within 90 days prior to trial. *Id.* Plaintiffs were ordered to disclose their expert witnesses by June 21, 2012, and all discovery was to be completed by September 10, 2012.  [*Davis* Dkt. 111.]  Leave was not sought, nor granted, to file expert reports beyond the deadline set by the Court.  Nor have the Plaintiffs cited any facts constituting good cause for filing an expert report beyond the deadline set by the Court.  The court has not been informed of any stipulations respecting expert disclosure, other than the parties' stipulation to exclude or redact certain matters. The Court has the authority to manage its docket by, among other things, setting and enforcing deadlines.  *Cf. Hunt v. CNH Am. LLC*, No. 12-1301-cv, 2013 U.S. App. LEXIS 2533, at \*5-6 (2d Cir. Feb. 6, 2013)(affirming the district court's decision to exclude a late-filed supplemental expert report that was disclosed "after the close of discovery and without any request for an extension of the deadline."); *Derisme v. Hunt Leibert Jackson, P.C.*, 3:10-cv-244, 2011 U.S. Dist. LEXIS 128844, at \*4-5 (D. Conn. Nov. 8, 2011) (granting

motion to preclude party from identifying an expert after the expert discovery deadline); *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 33, 39 (D. Conn. 2007) (granting defendant's motion to strike expert report where plaintiffs failed to designate expert and serve report until eight months after deadline for expert discovery, after the filing of motions for summary judgment, and failed to articulate good cause for the delay).

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted). "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (internal citations omitted). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Id.* "A district court's *in limine* ruling 'is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

Expert witness testimony is admissible only if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based upon sufficient facts or data;" (3) "the testimony is the product of reliable principles

and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  Although Rule 702 embodies a "liberal standard of admissibility for expert opinions," *Nimely v. City of N.Y.*, 414 F.3d 381, 395 (2d Cir. 2005), it also "establishes a standard of evidentiary reliability" for "all 'scientific,' 'technical,' or 'other specialized' matters within its scope," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999).  What constitutes "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."  *Id.* at 153.

In addition, the Second Circuit "requir[es] exclusion of expert testimony that expresses a legal conclusion. . . . Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."  *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992).  In *Hygh*, the Second Circuit "invoked the . . . illuminating distinction between admissible and excludable versions of an expert's opinion testimony" in the advisory committee's note to Federal Rule of Evidence 704.  *Id.* at 363.

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704 advisory committee's note, *quoted in Hygh*, 961 F.2d at 363-64.

"The distinction between fact and legal conclusions, however, is extremely fine." *TC Systems Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 181 (N.D.N.Y. 2002). An expert may testify about industry custom with respect to the inclusion of certain contract terms, *Nuvest, S. A. v. Gulf & Western Industries, Inc.*, 649 F.2d 943, 950 (2d Cir. 1981), industry standard practices, *see Marx & Co., Inc. v. Diners' Club Inc.* (*Marx*), 550 F.2d 505, 509 (2d Cir. 1977), or a common industry specific trade meaning or usage of a word or term, *Moore v. Tristar Oil & Gas Corp.*, 528 F. Supp. 296, 310 (S.D.N.Y. 1981). But an expert may not interpret a contract for the jury, *Marx*, 550 F.2d at 509-10, nor may an expert testify about the meaning of legal terms, *Schneider*, 379 F. Supp. 2d at 470.

Moreover, an expert may not "simply rehash[] otherwise admissible evidence about which he has no personal knowledge. . . . While an expert must of course rely on facts or data in formulating an expert opinion, *see* Fed. R. Evid. 703, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence. *See* [*In re*] *Rezulin* [*Prods. Liab. Litig.*], 309 F. Supp.2d [531,] 551 [(S.D.N.Y. 2004)] (rejecting portions of plaintiffs' expert's testimony that was 'a narrative reciting selected regulatory events' because '[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence')." *Schneider*, 379 F. Supp. 2d at 468-69.

<u>Analysis</u>

Both versions of Henning's revised expert report dated April 22, 2013 and April 19, 2013, respectively, improperly contain new content in violation of Federal Rule of Civil Procedure 26(a).  Rule 26(a)(2)(B)(i) provides that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them[ ... ]."  Fed. R. Civ. P. 26(a)(2)(B)(i).  Although an expert witness has an affirmative duty to supplement a report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," Fed. R. Civ. P. 26(e)(1)(A), "'[Rule] 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect.'" *Lewis v. FMC Corp.*, 786 F.Supp.2d 690, 705 (W.D.N.Y. 2011) (quoting *Coles v. Perry,* 217 F.R.D. 1, 3 (D.D.C. 2003)).  "It should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought" and therefore courts have held that a "Plaintiff's duty to supplement its initial expert report does not arise when plaintiff seeks to bolster its earlier submission, but rather, arises only if the expert *subsequently* learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete...." *Innis Arden Golf*

*Club v. Pitney Bowes, Inc.,* Np.3:06CV1352(JBA), 2009 WL 5873112, at *3 (D. Conn. Feb. 29, 2009) (internal quotation marks and citation omitted) (emphasis in the original); see e.g., *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.,* 769 F.Supp.2d 269, 278 (S.D.N.Y.2011) (holding that "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issue they already opined upon, or to continually supplement their opinions.") (internal quotations & citation omitted); *Lewis*, 786 F.Supp.2d at 705 ("To construe supplementation to apply whenever a party wants to bolster ... [its] expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation.") (internal quotation marks and citation omitted); *Great American Ins. Co. of NY v. Summit Works,* LLC, No.3:10CV1669 (JGM), 2012 WL 459885, at *7 (D. Conn. Feb. 13, 2012) (same);  *Kovaco v. Rockbestos-Surprenant Cable Corp.*, No. 3:11CV377 (WWE), 2013 WL 1620141, at *2 (D. Conn. April 15, 2013) (same).

Therefore, "[i]f an expert's report does not rely [on] any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26." *Cedar*, 769 F.Supp.2d at 278-79.  Rule 37(c) provides that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e) ... is not allowed to use that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).  "The purpose of Rule 37(c)(1) is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez,* 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004).

In assessing whether to preclude an expert's report, courts consider the following factors: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Softel, Inc. v. Dragon Med. & Scientific Comm., Inc.,* 118 F.3d 955 (2d Cir.1997).

Applying the factors prescribed for determining whether to exclude an expert's opinion, the motion to preclude should be granted. As noted above, the Plaintiff has given no justification for extending the Court's filing deadline. Much of the proposed testimony is conclusory and devoid of discernible analysis, making it impossible to determine its importance. The new content Henning added to both versions of his revised expert report dated April 22, 2013 and April 19, 2013, respectively, including his new discussions regarding IRS Form 5305 and Rule 206(4)-2 of the Adviser's Act is clearly an attempt to bolster and improve his prior submission. There is no evidence that the information he added was previously unknown or unavailable to him and therefore it would not be appropriate to allow him to supplement his original report now. Further, the failure to include in his original report discussions of regulations, statutes and regulatory guidance that are publically available cannot be substantially justified. To permit Henning to add this new material now would not be harmless as the Defendant would suffer prejudice in having to prepare to meet this new testimony. Although the Plaintiffs contend that there would be no prejudice as they would allow the Defendant to depose Henning on the newly added content,

the discovery period has long passed and it was not filed until the eve of trial, and the trial is now underway.[3]  Accordingly, the Court finds it inappropriate to permit Henning to supplement his report under Rule 26(e) to add such new content now and also finds it appropriate to preclude him from offering either of his revised expert reports under Rule 37.   The Plaintiffs' apparent reliance on the revised version(s) of Henning's expert report in addition to his original version of the report is clearly an attempt to bolster Henning's expert testimony.  *Lewis*, 786 F.Supp.2d at 705.  In addition, to permit the Plaintiffs to rely on one or both of the revised versions and the original version of the expert report would "amount to unlimited expert opinion preparation." *Id.*   The Court therefore GRANTS the Defendant's motion to strike the revised expert reports.  The Plaintiffs could only offer Henning's testimony consistent with his original report dated June 21, 2012 at trial.  This Order does not preclude the parties from excluding the introduction of testimony included in the report were it admissible.

As the Court has precluded the Plaintiffs from relying on either of Henning's revised expert reports, the Court will only analyze the Defendant's motion *in limine* with respect to the original version of Henning's report dated June 21, 2012.  As was the case in *Levinson*, Henning's original report is replete with impermissible legal opinions.  For example, Henning gives the ultimate legal conclusion that the Bank breached and violated its custodial obligations which

---

[3] To the extent the Plaintiffs had a legal basis to object to the Defendant's revised expert report and chose not to do so, their decision not to object does not constitute a legal basis for the Plaintiffs to disregard a Court Order by filing, beyond the deadline set by the Court, a substantively modified expert report under the guise of a report redacted to delete content which the Court has ruled impermissible.

invades the roles of the Court and the role of the jury.  (June 21, 2012 Version at
1-10, 2-4, 2-6, 2-11, 3-1).

Further, Henning does not meet the standard for admissibility of expert
testimony. His report inappropriately reaches conclusions about the Bank's
duties, obligations, and requirements based on his recitation of selected
provisions of handbooks from the Office of the Comptroller of the Currency,
selected interpretations of the Internal Revenue Services (IRS) regulations and
IRS form 5305, the American Institute of Certified Public Accountants'
Codification of Statements on Auditing Standards, adopted after the custodian
agreement was entered into, as well as the Bank's internal policies, which he
argues apply to this custodial relationship, without explaining the basis on which
he concluded that they are applicable. (*See, e.g.*, June 21, 2012 Version at 2-3, 2-4,
1-1, 1-5).  Throughout the opinion, Henning merely recites or paraphrases
provisions or handbooks and other material without stating that these are
generally accepted bank custodial principles, practices or procedures. Thus, his
conclusions are devoid of the context and content from which a jury could
discern whether his conclusions are credible and reliable.  His opinions fail to
evince any specialized knowledge or experience, often fail to present sufficient
facts and data, fail to establish the reliability of principles applied and show the
analysis used to reach the conclusion and demonstrate that he reliably analyzed
all of the relevant facts as required by the Federal Rules of Evidence.  As such his
opinions would not aid the jury and may confuse or mislead them.  *See* Fed. R.
Evid. 702; *Schneider*, 379 F. Supp. 2d at 470-71 ("The [expert report] goes on to

apply . . . generic legal principles to the facts of the instant case, resulting in [the expert's] giving his opinion that the securities laws have in fact been violated. . . . This type of expert testimony is not permitted. It is inadmissible because it usurps the jury's role in finding the facts and applying those facts to the law as instructed by the court.") (citations omitted).  The rules governing opinions on ultimate issues do not forbid all testimony concerning ultimate issues.  *See, e.g.*, *U.S. v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000) (citing Fe. R. Evid. 704(a)). "Although opinion testimony, whether offered by a lay witness pursuant to Fed. R. Evid. 701, or by an expert pursuant to Fed. R. Evid. 702, is not inadmissible simply because it embraces an ultimate issue to be decided by the trier of fact, it is not properly received merely to tell the jury what result to reach." *U.S. v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (quotations and citations omitted).  Expert testimony must be "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it." *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (citation omitted).  While Henning may testify about standard practices in the industry based on his experience, he may not "merely [] tell the jury what result to reach." *U.S. v. Garcia*, 413 F.3d at 210 (quotation omitted).

Lastly, Henning may not proffer opinions which do not draw on his expertise but merely restate otherwise properly admitted evidence such as his recitation of the terms of the custodial agreement as well as the testimony of WNB employees. *See* (June 21, 2012 Version at 2-4 through 2-6 through 2-8); *See*

14

*Schneider*, 379 F. Supp. 2d at 468-69. The Court therefore GRANTS the Defendant's motion *in limine* to exclude improper opinions given by Henning in the original expert report dated June 21, 2012.

The Court has reviewed the Henning report in its entirety and finds it inadmissible for the reasons stated above.  Although the Court will not provide a line-by-line evaluation of the deficiencies of the Henning report, the following examples illustrate the sort of opinions offered in Henning's June 21, 2012.

·       As noted above, the Rules of Evidence do not completely prohibit Henning from offering an opinion as to the ultimate issue.  However, he may not simply tell the Jury what to decide, and his testimony must comport with Federal Rule of Evidence 702.  As an example, at the top of page 2-3 in the June 21, 2012 version, Henning writes: "Instead, in a clear violation of its custodial obligations, WNB never undertook any action to independently ascertain the fair market value of plaintiffs' IRAs."  This statement does not conform to the requirement of Federal Rule of Evidence 702, as it is not based on his specialized or technical knowledge, nor does it have a sufficient basis in fact.  This is merely one example; it is by no means a comprehensive list of inadmissible opinions in Henning's report.

·       June 21, 2012 Version at 1-2 to 1-3: "However, individual account owners never received any documentation from BLMIS, and WNB did not pass along any of the BLMIS transaction information it had received to its individual account holders."  This sentence is misleading because it suggests WNB had a

duty to send this information to the Plaintiffs, without citing a provision of the custodial agreement requiring it to do so, or any industry practice that would support an argument that WNB was required to do so.

·     **June 21, 2012 Version at 1-8 through 1-10:** Henning cites no facts, law or industry practice to support his assertion that BLMIS was a "sub-custodian" for WNB. The report does not define the term or identify why it is so designated. Nor does he provide any analysis that could help the jury to understand how it is relevant.

·     **June 21, 2012 Version at 1-3: "The duties of a custodian are well understood in the financial community. The Investment Advisers Act of 1940 (the 'Advisers Act') defines the custody of assets and discusses the requirement for investment advisers to ensure the safekeeping of clients' assets, which may be accomplished by a qualified custodian, such as a bank, maintaining the clients' investments. The Advisers Act further details that those funds and securities should be held 'in a separate account for each client under that client's name' and that the client be provided with quarterly account statements."** This passage is irrelevant because Henning does not establish that the Investment Advisers Act of 1940 applies to the custodial relationship at issue here. It has not been established that WNB is an investment advisor or subject to the Advisers Act. The reference to the Advisers Act contains too much potential to confuse and mislead the Jury.

· **June 21, 2012 Version at 1-5 through 1-8; 1-10; 2-11: Henning offers no proof that "SAS 70" reports were customarily prepared by BLMIS or businesses like BLMIS, nor does he cite to any authority for the bank to require BLMIS to provide one.  References to "SAS 70" reports are irrelevant, insufficiently based in fact, and too potentially misleading and confusing to the jury.**

· **References to OCC handbooks, for example the reference on page 1-6, found throughout Henning's report.  Henning offers opinions that are not based upon his training or experience. Instead he simply cherry picks and restates provisions of the OCC materials and draws conclusions unfounded in his articulated experience or industry practice or other credible basis. His methodology or analysis is not presented.  The jury has no way to weigh the reliability and credibility of his opinion. It simply tells the juror what to believe but not why.  Page 1 of the OCC Custody Services Handbook (January 2002) expressly provides that the custodial relationship is contractual, acknowledging that the terms of the custodial agreement and not the Handbook govern their relationship.  Yet, the opinions expressed neither mention this fact nor reconcile how duties not included in the custodial agreement are imposed by the OCC Handbook.**

**Similar deficiencies appear on pages 1-7 where no analysis is given nor any attempt at reconciliation between the conflicting provisions of the custodial agreement and the OCC Handbook or bulletin offered.  The conclusion reached on page 1-11 is conclusory and devoid of analysis and could be read to mean the**

bank contracted to provide investment services. As it can find no properly supported opinion in the report, the Court excludes the report in its entirety.

The Court notes that the original report also contains content that was the subject of motions *in limine*, certain stipulations by the parties, or related to claims and theories on which this Court has granted judgment as a matter of law. For example, Henning opines on the Bank's alleged breach of Paragraphs 3 and 7 of the Custodian Agreement by failing to return Plaintiffs' funds, a claim on which the Court granted summary judgment in favor of the Defendant.  This content should also be excluded from the original report dated June 21, 2012.

After the Court informed the parties of its intent to grant the Defendant's motion *in limine* and its rationale therefore, the Plaintiffs requested, and the Court denied, an opportunity to make an "offer of proof" through the presentation of additional evidence on the admissibility of the Henning report. The Court now supplements its articulation of the reasons it denied Plaintiffs' request to make an offer of proof as unnecessary and improper.

As the Second Circuit found in *Litras v. Long Island R.R.*, the introduction of such evidence is unnecessary to create a record because there, as is the case here, the question at issue was the subject of a motion *in limine*, to which Plaintiffs had the opportunity to object.  No. 06-2608-cv, 2007 U.S. App. LEXIS 6174, at *3 (2d Cir. Mar. 14, 2007) (finding no error in the District Court's denial of plaintiff's offer of proof where "this proposed testimony was the subject of a motion in limine, and thus the District Court was sufficiently aware of its content,

as [is the Second Circuit]") (citing *W.W.W. Pharm Co. v. Gillette*, 984 F.2d 567, 575 n.4 (2d Cir. 1993)).  It is well settled that the purpose of an offer of proof, after the Court excludes evidence, is to put into the record the substance of the evidence to be excluded.  *See* Fed. R. Evid. 103(a).  Here the excluded evidence is already in the record.  Plaintiffs' attempt to introduce other evidence in opposition to the motion *in limine* is not an offer of proof.  Rather, it is effectively a motion for reconsideration.

Plaintiffs deny that they are seeking reconsideration, but if they conceded that they were, the court would deny the request as Plaintiffs have articulated no fact or controlling law presented which the Court overlooked or any intervening fact or law which would alter the Court's decision.  *See Bank of Am. Nat'l Ass'n v. AIG Fin. Prods. Corp.*, No. 11-1189-cv, 2013 U.S. App. LEXIS 6866, at *7-8 (2d Cir. Apr. 5, 2013) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 227 (2d Cir. 1995)).  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Space Hunters, Inc. v. United States*, No. 11-3153-cv, 2012 U.S. App. LEXIS 21606, at *11 (2d Cir. Oct. 17, 2012)(quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)).  The Plaintiffs did not contend that the Court failed to consider any law or fact which they presented

or which is intervening, nor do they assert that the Court's ruling is clearly erroneous or results in manifest injustice.  Instead, they merely sought to "make a record for appeal." Due to the gravity and complexity of the issue, the Court has spent many hours reviewing, distinguishing between and analyzing the various Henning reports, researching the applicable law, analyzing the issues briefed by the parties, formulating its decision and drafting its ruling.  Plaintiffs sought to offer proof on the last day of the evidentiary phase of the liability stage of the trial, weeks after the motion *in limine* was filed and only after learning of the Court's ruling. Allowing Plaintiffs to admit evidence to support their objection to the Defendant's motion *in limine* would in fairness necessitate allowing the Defendant the same opportunity. Plaintiffs have shown no good cause for a second opportunity to advocate for the admission of their expert's opinion. Moreover, the Defendant would be prejudiced both from a timing standpoint and because the Plaintiffs have the benefit of the Court's thought. The request to make an offer of proof is denied as there is record for appeal; they have no procedural entitlement to make it, and re-litigation of the issue is highly prejudicial to the Defendant.

## II.   PLAINTIFFS' CUTPA CLAIM

The *Levinson* and *Davis* plaintiffs have alleged that the Defendant violated the Connecticut Unfair Trade Practices Act ("CUTPA") by failing to comply with federal banking regulations which require it  to maintain adequate safeguards and controls to protect the Plaintiffs' funds held in what the Plaintiffs allege to be a collective investment fund, in violation of 12 C.F.R. § 9.2.  In its May 20, 2013

Order on Motions in Limine [*Levinson* dkt. 554; *Davis* dkt. 345; *Short* dkt. 218], the Court granted the Defendant's motion to preclude the Plaintiffs from offering expert evidence regarding whether the BLMIS account in the Bank's name constitutes a collective investment fund and was held by the Bank in a fiduciary capacity within the meaning of 12 C.F.R. §9.2.  Specifically, the Court ruled that Plaintiffs' expert Rodgers may not offer an opinion as to collective investment funds because he did not proffer an opinion on collective investment funds in his expert report.  [5/20/13 Order, p. 17].  Further, the Court ruled that Plaintiffs' expert Henning could not offer testimony as to collective investment funds because he had not opined "that the Bank's account constituted a collective investment fund but merely restate[d] the regulatory requirements which apply to collective investment funds," thereby making any potential testimony based on his expert report not probative to the ultimate issue of whether the Bank's account constituted a collective investment fund.  [*Id.* at pps. 17-18].  The Court noted that Henning had "actually testified at his deposition that it was his opinion that the custodial arrangement did *not* constitute a collective investment fund," therefore rendering any testimony Henning could offer at trial improper and in direct contradiction to his prior disclosed opinion.  [*Id.* at pps. 17-18].

Pursuant to subsequent inquiries from the Court as to what further evidence Plaintiffs possess that supports their CUTPA claim, Plaintiffs have submitted a Memorandum [*Levinson* dkt. 555; *Davis* dkt. 346] to which Defendant

has responded [*Levinson* dkt. 557; *Davis* dkt. 348].[4]  Plaintiffs cite to four pieces of evidence that allegedly support their CUTPA claim, including (1) the June 21, 2012 Expert Report of Steven Henning, (2) Steven Henning's deposition testimony, (3) Steven Henning's April 22, 2013 Revised Expert Report, and (4) the deposition testimony of Defendant's expert Edward E. Seifried.  None of the evidence to which Plaintiffs refer, however, offers an opinion that the BLMIS account in the Bank's name constituted a collective investment fund so as to support Plaintiffs' CUTPA claim.  As the Plaintiffs have no evidence to support their claim that the arrangement at issue was a collective investment fund, and in light of the fact that Seifried's and Henning's testimony expressly refute that the Bank's arrangement constituted a collective investment fund, the Court will preclude the Plaintiffs from introducing their CUTPA claim at trial.

Plaintiffs' effort to direct the Court to Henning's June 21, 2012 expert report is misplaced.  Plaintiffs claim that Henning in this report "expressly addressed 'collective investment funds' and defined a 'collective investment fund,'" and that he "further opined that, '[w]hen a national bank administers a common investment fun, it must comply with 12 CFR §9.18" and must follow OCC regulations.  [Ps' Memo, *Levinson* dkt. 555; *Davis* dkt. 346, pp. 1-2].  However, as the Court held in the May 20 Order on the motions in limine, Henning did not posit an opinion as to whether the arrangement at issue constituted a collective

---

[4] The Plaintiffs in *Short v. Connecticut Community Bank*, 3:09-cv-1955(VLB) do not have a CUTPA claim and so these documents have not been filed on the *Short* docket.

investment fund, but merely recited law applicable to these arrangements that constitute collective investment funds.

Further, as the Court noted in the May 20 Order, Henning subsequently testified that the Bank did not operate a collective investment fund.  Plaintiffs contend that, on cross examination, "Henning clarified that the basis for his response was Roberta Murphy's testimony that the Bank had never established a collective investment fund."  [Ps' Memo at p. 3].  Plaintiffs' argument is problematic for two reasons.  First, Dr. Henning's testimony does not clearly reflect that he based his opinion on Roberta Murphy's testimony:

> Q: And Roberta Murphy – you said to Mr. Merschman, there was no collective investment fund here, right?
>
> A: Correct.
>
> Q: And that's because Roberta Murphy testified there was no collective investment fund, right.
>
> A: I recall that, yes.

It is not at all clear from the above testimony whether Henning was conceding that he based his opinion as to the non-existence of a collective investment fund on Roberta Murphy's testimony, or whether Henning was merely noting his recollection that Roberta Murphy had testified that a collective investment fund did not exist.  Furthermore, if Plaintiffs are correct that Henning based his opinion that the Bank was not operating a collective investment fund on Roberta Murphy's testimony that the arrangement did not constitute a collective investment fund (as opposed to on an evaluation of the relevant facts and evidence in this matter), this opinion would be improper.  Expert witness

testimony is admissible only if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based upon sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  Further, "[d]istrict courts have a gatekeeping role under Federal Rule of Evidence 702 and are charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Lynch v. Trek Bicycle Corp.*, 374 F. App'x 204, 206 (2d Cir. 2010) (internal quotation marks and citation omitted).  Henning had a duty to base his opinions on an evaluation of the facts of this particular case as seen through the lens of his own expertise; if Henning based his opinion solely on the ultimate conclusion of lay witness Murphy, as Plaintiffs apparently contend, then such an opinion is inadmissible as well as utterly unhelpful in assisting a jury in deciding whether this arrangement constituted a collective investment fund.

Plaintiffs also proffer as evidence of their CUTPA claim a single footnote from Henning's April 22, 2013 Revised Expert Report.  Even if this report had not been stricken, it would not support the Plaintiff's CUTPA claim. The entirety of this Revised Report, though, is inadmissible as explained above.  In addition, although Plaintiffs argue that Henning "took note of the factual dispute in this case between the Bank's position . . . and plaintiffs' position," this footnote offers no opinion whatsoever on the existence of a collective investment fund; rather, it notes only that Henning is "aware that there is a dispute in this matter."  This

testimony therefore has no probative value and neither supports nor opposes Plaintiffs' CUTPA claim.

Plaintiffs' reliance on the deposition testimony of Defendant's expert Edward E. Seifried is equally unavailing as his testimony lends no support to their CUTPA claim.  Seifried testified first that collective investment funds must comply with the requirements of 12 C.F.R. §9.18 and second that, during his career at the OCC, he encountered arrangements "similar in mechanics" to the arrangement at issue in this case.  [Ps' Memo at p. 6].  Plaintiffs cite specifically to the following testimony:

> Q: In the years you spent as a bank examiner with the OCC, did you encounter an arrangement similar to the one at issue in this case which was not a common trust fund or collective investment fund?
>
> A: I did not, keeping in mind that I did trust exams so that anything like that would have been set up as a common fund.  There would have been no reason to see it.

[Ps' Memo at p. 6].  This testimony, however, does not support Plaintiffs' contention that the arrangement at issue was a collective investment fund. Rather, although Seifried testified that he had not encountered an arrangement like the one at issue that was *not* a collective investment fund, he specifically noted that he would have had no reason to see such an arrangement during his time as a bank examiner, as Seifried did trust exams only.  In addition and as Defendant notes, Seifried explicitly testified in *Davis* that "the bank didn't have any, does not have any common [or] collective funds."  [D's Opposition, *Levinson* dkt. 557; *Davis* dkt. 348; at p. 5]. Similarly, Seifried testified in *Levinson* that the

arrangement at issue was not a collective investment fund because "there is no trust establishing the fund.  You need a bank with trust powers to establish a trust because what it is, it's called a collective trust. . . . You have to have a governing document, and the accounts that participate in it have to exist for a legitimate fiduciary purpose."  [*Id.* at Exh. 2].  Contrary to the Plaintiffs' contention, Seifried's testimony, then, does not support their CUTPA claim but rather explicitly controverts it.

In sum, none of the evidence Plaintiffs cite supports their claim that the arrangement at issue constituted a collective investment fund such that their CUTPA claim could be viable.  Rather, each of the foregoing pieces of purported evidence either offer no opinion at all about the nature of the arrangement at issue, or expressly conclude that the arrangement did not constitute a collective investment fund.  Plaintiffs are thus precluded from offering any expert testimony at trial as to whether this arrangement constituted a collective investment fund.

The Plaintiffs' CUTPA claim rests solely on their contention that the BLMIS account in the Bank's name constitutes a collective investment fund and was held by the Bank in a fiduciary capacity within the meaning of 12 C.F.R. §9.2, thus requiring the Defendant to maintain adequate safeguards and controls to protect the Plaintiffs' funds.  Plaintiffs have not proffered any expert testimony as to whether the arrangement constituted a collective investment fund, nor have they cited to any other evidence that would support their contention that a collective investment fund existed, discovery has long since closed, and the issue was not raised until the eve of trial.  As such, any amendment the Plaintiffs could make to

their complaint to allege a CUTPA claim on a new theory of liability would be futile.[5]  Plaintiffs are thus barred from bringing their CUTPA claim at trial.


                                        IT IS SO ORDERED.

                                        _____/s/_____

                                        Hon. Vanessa L. Bryant
                                        United States District Judge


Dated at Hartford, Connecticut: June 27, 2013

---

[5] The Second Circuit has "referred to the prejudice to the opposing party resulting from a proposed amendment as among the 'most important' reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted).  "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."  *Id.* at 725–26 (internal quotation marks and citation omitted). Courts have typically found amendments to be prejudicial in circumstances where discovery has been completed and the case is near or on the eve of trial.  *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of motion to amend as "especially prejudicial given the fact that discovery had been completed and [the defendant] had already filed a motion for summary judgment"); *see also Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (same where "case was near resolution and discovery had been completed"); *Juncewicz v. Patton,* No. 01–cv–0519E(SR), 2002 WL 31654957, at *6 (W.D.N.Y. Oct. 8, 2002) (denying leave to amend complaint on "eve of trial" as amendment would "unduly delay the final disposition of this action").